UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
AUCTUS FUND, LLC,               )
                                )
                Plaintiff,      )
        v.                      )        CIVIL ACTION
                                )        NO. 21-11193-WGY
DRONE GUARDER, INC., and        )
ADAM TAYLOR,                    )
                                )
                Defendants.     )
_____)

YOUNG, D.J.                              February 14, 2022

**MEMORANDUM OF DECISION**

## I.   INTRODUCTION

The plaintiff Auctus Fund LLC ("Auctus") filed suit against
Drone Guarder, Inc. ("Drone") and Adam Taylor ("Taylor") on July
23, 2021.  Compl. & Demand for Jury Trial ("Compl."), ECF No. 1.
The defendants Drone and Taylor moved to dismiss Count V (fraud
and deceit).  Mot. Dismiss, ECF No. 13.  At the motion hearing
held on January 20, 2021, Auctus withdrew Count V, rendering the
motion to dismiss moot.  Electric Clerk's Note (Jan. 20, 2022),
ECF No. 28.

At the hearing, the Court asked the parties to explain why
the Court has subject matter jurisdiction over the matter.
Although neither party objected to the Court's exercise of
subject matter jurisdiction, the Court expressed its concern

that the only alleged basis for jurisdiction may be lacking.
See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) ("It is
black-letter law that a federal court has an obligation to
inquire sua sponte into its own subject matter jurisdiction.").

This memorandum explains the basis of this Court's subject
matter jurisdiction.

## II.   BACKGROUND

### A.   Relevant Procedural History

On November 16, 2021, this Court ordered each party to
submit its citizenship information because Auctus based federal
jurisdiction solely on diversity of citizenship.  Order, ECF No.
17.  Both Auctus and Drone responded to the order on November
30.  See Def. Drone Guarder's Resp. Court's Order Identify
Citizenship Def.("Drone's Resp. Order"), ECF No. 20; Pl.'s Resp.
Nov. 16 Order, Ex. A, LLC Members, ECF No. 21-1.

### B.   Facts Alleged in the Complaint

Auctus is a Boston-based limited liability company,
organized under the laws of Delaware.  Compl. ¶ 4.  Drone is
incorporated in Nevada.  Id. ¶ 5.  Defendant Taylor is a
resident of the United Kingdom.  Id. ¶ 6.  As is discussed
later, see infra II.C., Drone's principal place of business is
subject to dispute.

Auctus and Drone executed two transactions as part of
Auctus's investment in Drone, each of which contained a

Securities Purchase Agreement and Convertible Promissory Note ("Note").  Id. ¶¶ 10-12.  The first set of transactions occurred on or about January 22, 2018, and the second on or about May 10, 2018.  Id. ¶¶ 10-12.  In the first purchase agreement, Auctus agreed to loan Drone $165,000.  Id. ¶ 10.  Auctus lent Drone an additional $125,000 in the second purchase agreement.  Id. ¶ 12.

Each Note mandates that Drone pay a twelve percent interest rate on the principal amount that it received until the principal is paid off.  Compl., Ex. B., Jan. 22, 2018, Convertible Promissory Note ("Jan. 22 Note") 2, ECF No. 1-2; Compl., Ex. D., May 10, 2018, Convertible Promissory Note ("May 10 Note") 2, ECF No. 1-4.

Taylor, who was the Chairman, Chief Executive Officer, and Chief Financial Officer of Drone, signed and executed two documents titled, "Affidavit of Confession of Judgment" ("Affidavits") for the agreements.  Compl. ¶¶ 12, 13.  In the Affidavits, Taylor "authorize[d] the federal courts and/or state courts located in the Commonwealth of Massachusetts to enter judgment against Borrower and Guarantor in the amount of . . . One Hundred Sixty-five Thousand Dollars ($165,000.000), less any payments made on or after the date of this affidavit . . . ." Compl., Ex. E., Feb. 7, 2018, Affidavit of Confession of Judgment ("Feb. 7 Affidavit") 2, ECF No. 1-5; see also Compl., Ex. F., May 11, 2018, Affidavit of Confession of Judgment ("May

11 Affidavit") 2, ECF No. 1-6 (providing the same terms except for the amount due).

Auctus alleges that Drone violated the terms of the Notes in two principal ways: first, by failing to pay off the principal on time; and second, by failing to comply with a contractual reporting requirement with the Securities and Exchange Commission.  See Compl. ¶¶ 17, 32.

On July 23, 2021, Auctus sued, naming Drone and Taylor as defendants.  The complaint alleges seven counts: Count I asserts breach of contract; Count II breaches of the implied covenant of good faith and fair dealing; Count III unjust enrichment; Count IV breach of fiduciary duty; Count V fraud and deceit; Count VI negligent misrepresentation; and Count VII violations of the Massachusetts Consumer Protection Act, Mass Gen Laws ch. 93A, §§ 2, 11.  Id. ¶¶ 35-68.

**C.  Disputed Facts as to Citizenship**

Auctus's complaint states that Auctus is "a Delaware limited liability company with its principal place of business . . . in Boston[,] Massachusetts 02116."  Id. ¶ 4.  "[T]he citizenship of a limited liability company 'is determined by the citizenship of all of its members.'"  D.B. Zwirn Special Opp. Fund, L.P. v. Mehrotra, 661 F.3d 124, 127 (1st Cir. 2011) (quoting Pramco, LLC ex rel. CFSF Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006)).

There is no dispute about Auctus's citizenship.  Its members are from the following U.S. states and foreign nations: (1) Massachusetts, (2) Pennsylvania, (3) Washington, (4) Florida, (5) France, (6) California, (7) New Jersey, (8) New York, (9) Hong Kong, (10) New Hampshire, and (11) Spain.  See LLC Members.  Thus, Auctus is a citizen of these eleven states and nations for the purpose of diversity jurisdiction.

There is no dispute about Taylor's citizenship either. Although counsel representing Taylor and Drone has failed to specify Taylor's citizenship, Auctus alleges that he is a citizen of the United Kingdom.  Compl. ¶ 6.

Drone and Auctus disagree, however, as to Drone's principal place of business; Drone's response to the order is inconsistent with Auctus's complaint.

Auctus alleges that Drone is incorporated in Nevada and headquartered in **London**.  Compl. ¶ 5.  Drone, on the other hand, in its response to the Court's order, states that it is incorporated in Nevada but headquartered in **California**.  Drone's Resp. Order 1.  Specifically, Drone states that "according to the California Secretary of State, Drone Guarder does business and is headquartered in Torrance, CA."  Id.

This factual dispute is critical.  As will be explained, if Auctus is right, that would create a matter of first impression in this circuit.  If Drone is right, then this Court lacks

diversity jurisdiction -- since Auctus has a California-citizen member and thus is a citizen of California.

For the reasons explained below, the Court presumes that the complaint is correct -- that at the time of filing, Drone was headquartered in London.

## III. SUBJECT MATTER JURISDICTION

To determine whether diversity exists in this case, the Court must resolve what appears to be a matter of first impression in this circuit, viz., whether federal courts have diversity jurisdiction over cases between diverse U.S. citizens joined by alien parties on both sides of the controversy.[1]  Under Section 1332(a) of chapter 28 of the United States Code ("Section 1332(a)"), federal courts have diversity jurisdiction over cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties

_____

[1] Between the time Drone filed its motion to dismiss and the time of the hearing, another session of the Court issued an unpublished opinion on the matter.  See Integrated Commc'n & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co., No. 16-10386-LTS, 2021 WL 5493860, at * 3 (D. Mass. Nov. 22, 2021).  In that opinion, however, the Court did not discuss the novel nature of the issue and simply relied on Yarala v. Star Health and Allied Ins. Co., No.12-cv-11849-IT, 2014 WL 12689938, at *3 (D. Mass. July 11, 2014).  Yarala, however, does not directly support the proposition that diversity exists over actions between diverse domestic parties joined by foreign parties on both sides.  2014 WL 12689938, at *3.  Instead, Yarala held that there is no diversity in a suit between two foreign parties with a domestic party on only one side.  Id.

. . . ." 28 U.S.C. § 1332(a)(3).  The text of this statute, as well as the ultimate purpose of diversity and alienage jurisdiction make clear that federal courts have diversity jurisdiction in cases involving diverse U.S. citizens and alien parties on both sides.

### A. Style Note

This memorandum discusses many cases and hypotheticals involving complex party assignments.  To make this memorandum readable, it uses the following shorthand invented by Judge Debevoise in K & H Business Consultants v. Cheltonian, Ltd, with slight modifications.  567 F. Supp. 420, 421-22 (D.N.J. 1983).

The memorandum will use the letter "C" to denote the citizenship of domestic parties, the letter "A" to denote alien parties, and superscript numbers or letters to denote the state of citizenship.  Thus, a case between a U.S. citizen and an alien is denoted by

$$C \text{ v. } A$$

A Massachusetts plaintiff versus a New York defendant is denoted by:

$$C^{MA} \text{ v. } C^{NY}$$

A superscript number denotes any state or country in general terms.  Thus, any case involving two diverse domestic parties (without specifying their citizenship states) is denoted by:

$$C^1 \text{ v. } C^2$$

[7]

The following denotes any case involving two domestic parties from the same state, without specifying the state:

$$C^1 \text{ v. } C^1$$

Additionally, the parentheses denote a corporation. A corporation that is incorporated in Delaware and has its principal place of business ("PPB") in London would be denoted by:

$$(C^{DE} + A^{London})$$

Thus, for example, if the plaintiff is incorporated in Massachusetts with its headquarters in New York and the defendant is incorporated in California with its PPB in Illinois, that would be denoted by:

$$(C^{MA} + C^{NY}) \text{ v. } (C^{CA} + C^{IL}).$$

If the plaintiffs are (1) an individual Massachusetts citizen and (2) a Delaware incorporated company with its PPB in New York, and the defendants are (3) a Massachusetts individual,(4) a Delaware incorporated company with its PPB in New York, and (5) a Nevada-incorporated company with its PPB in London, then:

$$C^{MA} + (C^{DE} + C^{NY}) \quad \text{v.} \quad C^{MA} + (C^{DE} + C^{NY}) + (C^{NV} + A^{LONDON})$$

**B. This Case Presents the Alignment of $[C^1 + A \text{ v. } C^2 + A]$**

As stated above, the parties disagree as to the location of Drone's principal place of business. Auctus's complaint avers that it is London. Compl. ¶ 5. Drone's response to the Court's

order states that it is California.  Drone's Resp. Order 1.  At this stage of litigation, the Court presumes that Auctus's complaint is correct; that at the time of filing Drone was headquartered in London and is a citizen of the United Kingdom (as well as of Nevada, which is its place of incorporation).

Auctus is a citizen of many different states -- including California but _not_ Nevada -- as well as several foreign nations. See LLC Members.  If Drone's response is right that Drone is headquartered in California, that would defeat diversity -- because Auctus has a California member and thus is a California citizen.  If Auctus's complaint is right, then that would present the following alignment:

$$C^{MA} + C^{PA} + C^{WA} + C^{FL}\ C^{CA}\ + C^{NJ} + C^{NY}\ + C^{NH} + A^{FRANCE} + A^{HONG\ KONG} + A^{SPAIN}$$
$$v.$$
$$(C^{NV} + A^{LONDON}) + A^{LONDON}$$

Because none of the Cs in first row, i.e., none of Auctus's U.S. members, is from Nevada, and because the aliens' precise country of origin does not matter, the configuration is essentially $[C^1 + A\ v.\ C^2 + A]$.

Thus, to summarize, (1) if Drone is right, then there is no subject matter jurisdiction and the case must be dismissed, but (2) if Auctus is right, then the case presents the party alignment of $[C^1 + A\ v.\ C^2 + A]$.

The Court takes the complaint as true because Drone's filing with the California Secretary of State suggests that, _at_

the time the complaint was filed, Drone was headquartered in the
United Kingdom.

The First Circuit established in Valentin v. Hospital Bella
Vista that when a party disputes the accuracy of the
jurisdictional facts asserted by the complaint, "the plaintiff's
jurisdictional averments are entitled to no presumptive weight;
the court must address the merits of the jurisdictional claim by
resolving the factual disputes between the parties."  254 F.3d
358, 363 (1st Cir. 2001).  "In conducting this inquiry, the
court enjoys broad authority to order discovery, consider
extrinsic evidence, and hold evidentiary hearings in order to
determine its own jurisdiction."  Id. at 363 (emphasis added).
In the First Circuit's view, "when a factbound jurisdictional
question looms, a court must be allowed considerable leeway in
weighing the proof, drawing reasonable inferences, and
satisfying itself that subject-matter jurisdiction has attached"
because "[a] court's authority to hear a particular case is a
necessary precondition to the proper performance of the judicial
function."  Id. at 364 (emphasis added).

As stated above, Drone stipulates that "according to the
California Secretary of State, Drone Guarder does business and
is headquartered in Torrance, CA."  Drone's Resp. Order 1.

Drone's filing with the California Secretary of State[2] -- which was <u>not</u> submitted by either party --, however, states that Drone filed to register to do business on **August 20, 2021**. But Auctus filed its complaint on **July 23, 2021**. <u>See</u> Compl. The reasonable inference from the pleading and Drone's filing document then -- which this Court can make under <u>Valentin</u> -- is that Drone moved its headquarters from London to California after Auctus filed its complaint in July. 254 F.3d at 364.

Because "the jurisdiction of the court depends upon the state of things **at the time of the action brought**," <u>Grupo Dataflux</u> v. <u>Atlas Glob. Grp. L.P.</u>, 541 U.S. 567, 570 (2004) (emphasis supplied) (citing <u>Mollan</u> v. <u>Torrance</u>, 9 Wheat. 537, 539 (1824)), Drone is a citizen of the United Kingdom for

---

[2] Drone's filing is accessible at https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=04779980-31196665. It is admissible evidence under Federal Rule of Evidence 803(8)(B). It is unclear who filled out the "Filing Date." If Drone did, then the statement in the filing that the filing was made on August 20, 2021 would be a non-hearsay admission by Drone (because Auctus would be the party who would want to use it) within a hearsay-yet-admissible public record exception of Rule 803(8)(B). If a California official filled out the date, then the document is just a public record document admissible under Rule 803(8)(B).

As stated above, the Court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." <u>Valentin</u>, 254 F.3d at 363-64. Thus, because it is admissible evidence, the Court may consider Drone's filing with the California Secretary of State.

jurisdictional purposes.  This Court will revisit the issue should it be presented with contrary evidence but, at this stage, presumes that Drone is a citizen of United Kingdom.

**C.   The Issue in this Case: Does this Court Have Subject Matter Jurisdiction over an Action Between Diverse Domestic Parties with Aliens on Both Sides?**

Section 1332(a) of chapter 28 of the United States Code provides that:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
>
> > (1)  citizens of different States;
> >
> > (2)  citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
> >
> > **(3)  citizens of different States and in which citizens or subjects of a foreign state are additional parties . . . .**

28 U.S.C. § 1332(a)(emphasis added).

The issue presented in this case is this:

> Do federal courts have diversity jurisdiction over actions between diverse domestic parties with aliens on both sides under Section 1332(a)(3)?

In other words, the issue is whether diversity jurisdiction exists in the following permutation under Section 1332(a)(3):

[12]

$$C^1 + A \quad v. \quad C^2 + A$$

Courts have dealt with five types of situations: (i) actions between two aliens (A v. A); (ii) actions between two aliens with one domestic party on one side (e.g., A v. A + C); (iii) actions between a domestic party and an alien (e.g., C v. A); (iv) actions between two diverse domestic parties with alien(s) on one side (e.g., $C^1$ v. $C^2$ + A); and (v) actions between two diverse domestic parties with aliens on both sides (e.g., $C^1$ + A v. $C^2$ + A).

To reiterate, the fifth situation is the one presented in this case.

### 1.   A v. A

The Supreme Court has held that there is no federal diversity jurisdiction over actions between two aliens. Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 824 n.2 (1969) ("The District Court would have had no jurisdiction of a suit brought by Panama against Caribbean, since both were alien corporations."); Jackson v. Twentyman, 27 U.S. 136, 136 (1829); see also Doidge v. Cunard S.S. Co., 19 F.2d 500, 502 (1st Cir. 1927) ("[O]ne alien cannot sue another in a federal court unless a federal question is raised."); Engstrom v. Hornseth, 959 F. Supp. 545, 547-48 (D.P.R. 1997) (listing sources).

### 2.   A v. A + C

The courts have held that no diversity exists when an alien appears on both sides with a domestic party or parties on only one side.  See, e.g., Grupo Dataflux, 541 U.S. at 569 (stating, in case involving plaintiffs who were both domestic and alien parties and an alien defendant, that because "aliens were on both sides of the case . . . the requisite diversity was therefore absent"); Yarala, 2014 WL 12689938, at *3 (holding that there is no diversity in a suit following the configuration of A v. A + C); Israel Aircraft Indus. v. Sanwa Bus. Credit, 16 F.3d 198, 202 (7th Cir. 1994) (same); U.S. Motors v. Gen. Motors Europe, 551 F.3d 420, 422-23 (6th Cir. 2008) (same).  Indeed, this session of the Court recently dismissed a case during trial for this reason.  See Electric Clerk's Notes, Chan v. Wellington Mgmt. Co., Civ. A. No. 19-11605-WGY (Oct. 19, 2021), ECF No. 140; Mem. Supp. Defs.' Mot. Dismiss Lack Subject Matter Jurisdiction, Chan v. Wellington Mgmt. Co., Civ. A. No. 19-11605-WGY (Oct. 13, 2021), ECF No. 133.

### 3.   C v. A

Federal courts have diversity jurisdiction over actions between a domestic party and an alien unless the alien party is a permanent resident of the United States and resides in the same state as the opposing domestic party.  28 U.S.C. § 1332(a)(2); Fuzhou Maozen Imp. & Exp. Co. v. PetEdge, Inc., No. 18-cv-10806-ADB, 2018 WL 5315246, at *2 (D. Mass. Oct. 26, 2018)

(Burroughs, J.) (holding that diversity jurisdiction exists under Section 1332(a)(2) in a case involving Chinese plaintiffs and corporations incorporated and headquartered in Massachusetts).

### 4.    C $^1$ v. C $^2$ + A

Though it appears that neither the Supreme Court nor the First Circuit has explicitly held that there is diversity jurisdiction in cases between two diverse domestic parties with an alien(s) on one side, most courts have held that the express language of Section 1332(a)(3) provides for jurisdiction in such cases.  See 28 U.S.C. § 1332(a)(3) (conferring jurisdiction over cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties" as long as the amount in controversy is met); see also Singh v. Daimler-Benz AG, 9 F.3d 303, 312 (3rd Cir. 1993) ("Because in this case there is a deemed citizen of Virginia suing an alien and a citizen of Delaware and New Jersey, the district court properly found that there is the requisite diversity of citizenship."); Hunter v. Shell Oil Co., 198 F.2d 485, 488 (5th Cir. 1952) ("This court has approved the well established doctrine that federal courts have jurisdiction of suits brought, as here, by a citizen of one state against a citizen of another state and an alien, as joint defendants."); K & H, 567 F. Supp. at 422 ("Clearly this confers jurisdiction where there is an

action between citizens of different states and an alien is joined as a party plaintiff or a party defendant . . . .").

### 5.   $C^1 + A$ v. $C^2 + A$

The present case goes one step further.  Like the prior configuration, this case involves domestic parties on both sides that are completely diverse; however, unlike the prior configuration, this case has foreign parties on <u>both</u> sides.  It appears that neither the Supreme Court nor the First Circuit -- or even other sessions of this Court -- has dealt with this party configuration.  At least four circuits have addressed the question, and they all concluded that diversity jurisdiction exists in this alignment.  See <u>Dresser Indus, Inc.</u> v. <u>Underwriters Lloyd's of London</u>, 106 F.3d 494, 497-500 (3d Cir. 1997); <u>Allendale Mut. Ins. Co.</u> v. <u>Bull Data Sys., Inc.</u>, 10 F.3d 425, 427-28 (7th Cir. 1993); <u>Transure, Inc.</u> v. <u>Marsh and McLennan, Inc.</u>, 766 F.2d 1297, 1298-99 (9th Cir. 1985); <u>Goar</u> v. <u>Compania Peruana de Vapores</u>, 688 F.2d 417, 420 n.6 (5th Cir. 1982).[3]

---

[3] Only the Third Circuit in <u>Dresser</u> squarely addressed and discussed the issue.  106 F.3d at 497-500.  <u>Allendale</u> and <u>Transure</u> did not thoroughly discuss the issue but instead addressed it in passing.  See <u>Allendale</u>, 10 F.3d at 427-28; <u>Transure</u>, 766 F.2d at 1298-99.  <u>Goar</u> did discuss the merits of the issue but did so in a footnote.  <u>Goar</u>, 688 F.2d at 420 n.6.

This Court holds that diversity jurisdiction exists in a case like this -- an action between diverse domestic citizens with aliens named on both sides.

**First,** both the **text** and **purpose** of Section 1332(a)(3) suggest that federal courts have jurisdiction over actions between diverse domestic citizens with aliens on both sides. Given the clear textual and purposive indication by Congress, the ambiguous and perplexing legislative history does not move the needle.  The corollary of this conclusion is that Congress has abrogated the complete diversity rule for actions arising under Section 1332(a)(3).

**Second,** policy considerations -- even were the Court to consider them along with the fairly clear text -- suggest the presence of aliens ought not defeat complete diversity. Conferring jurisdiction over actions of the form [$C^1$ + A v. $C^2$ + A] does not contribute to the practical concern that parties may manufacture diversity jurisdiction by adding "fake" parties.

### a. The Text of Section 1332(a)(3)

Based on the unambiguous language of Section 1332(a)(3), this Court has jurisdiction in diverse actions with aliens on both sides.  As stated above, Section 1332(a)(3) provides that district courts have diversity jurisdiction between

> citizens of different States and in which citizens
> or subjects of a foreign state are additional
> parties . . . .

28 U.S.C. § 1332(a)(3).

The language is clear: there is diversity jurisdiction between diverse domestic parties, i.e., "citizens of different States" -- even when "citizens . . . of a foreign state are additional parties . . . ." Id. The term "additional" is unaccompanied by any limiting language.  Thus, it makes "no distinction based upon which side of the controversy -- plaintiff, defendant, or both -- the aliens appear." Dresser Indus, Inc., 106 F.3d at 497.

The absence of any limiting language in (a)(3) is particularly conspicuous given the detailed limitation found in subsection (a)(2): Section 1332(a)(2) provides that there is diversity jurisdiction between

> citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State . . . .

28 U.S.C. § 1332(a)(2) (emphasis added).

Had Congress sought to exclude the party alignment of [C $^1$ + A v. C $^2$ + A], then presumably it would have written subsection (a)(3) to state federal jurisdiction exists over actions between

> citizens of different States and in which citizens or subjects of a foreign state are additional parties except that the district courts shall not

[18]

> have original jurisdiction under this subsection of
> an action between citizens of different States where
> citizens or subjects of a foreign state appear on
> both sides of the controversy.

Given the preceding subsection's conspicuous limiting language, the Court declines to read any limitation into the broad language of subsection (a)(3). See, e.g., Hardt v. Reliance Standard Ins. Co., 560 U.S. 242, 252 (2010) (comparing two paragraphs in 29 U.S.C. § 1132(g), noting that "Congress knows how to impose express limits on the availability of attorney's fees in ERISA cases" because one subsection expressly did so, and refusing to read a limitation into the subsection at issue "[b]ecause Congress failed to include" the express limiting phrase that appear in a different subsection); cf. Russello v. United States, 464 U.S. 16, 23 (1983) (noting that when Congress includes a term "in one section of a statute but omits it in another" courts ought presume that Congress "act[ed] intentionally and purposely").

Thus, the language of the statute explicitly provides that there is federal jurisdiction in diverse actions with aliens on both sides. See Dresser, 106 F.3d at 495-96 (holding that diversity jurisdiction exists under Section 1331(a)(3) over "a suit between diverse [U.S.] citizens when, in addition to those citizens, aliens appear as both plaintiffs and defendants"); Allendale, 10 F.3d at 427-28 (concluding, based on the text of

Section 1332(a)(3) alone, that federal courts have diversity
jurisdiction in this party alignment).

### b. Complete Diversity is Inapplicable to Section 1332(a)(3)

This conclusion may seem to contradict the familiar rule of
"complete diversity."  In Strawbridge v. Curtiss, the Supreme
Court famously held that the precursor to Section 1332(a)(1)
required that there be "complete diversity" -- that each
plaintiff be diverse from each defendant.  7 U.S. (3 Cranch)
267, 267 (1806).  As noted above, the Supreme Court, implicitly
applying the complete diversity rule, has held that diversity is
destroyed in actions between two aliens with a domestic citizen
on only one side (i.e., A v. A + C).  Grupo Dataflux, 541 U.S.
at 569 (stating that because "aliens were on both sides of the
case . . . the requisite diversity was therefore absent"); see
also Virgin Diving LLC v. Blake, No. 17-12, 2018 WL 4625621, at
*4 (D.V.I. Sept. 26, 2018) ("Under the complete diversity
requirement of alienage jurisdiction, diversity jurisdiction
does not encompass suits by foreign plaintiffs against foreign
defendants.  This exclusion extends to cases involving an alien
on one side and an alien plus a U.S. citizen on the other."
(internal quotation marks omitted) (quoting 15 James Wm. Moore
et al., Moore's Federal Practice § 102.77 (3d ed. 2013)).

In the context of interpreting section 1332(a)**(3)**, however, the complete diversity rule is a strawman.  As the Supreme Court later confirmed, the complete diversity rule finds its home in "the words of the act of Congress," and **not** in the Constitution. State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 531 (1967).  In other words, the complete diversity rule is a creature of the Supreme Court's statutory interpretation, not its constitutional pronouncement.  In fact, the Constitution only requires "minimal diversity"; that at least one plaintiff be diverse from at least one defendant.  See id. (holding that Article III "poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens"); Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 492 n.18 (1983).  In Strawbridge, the Supreme Court, however, interpreted Section 11 of the Judiciary Act of 1789 -- which was the precursor to Section 1332 -- to impose the requirement of complete diversity.  7 U.S. (3 Cranch) at 267.

Given these two predicates -- that (1) the plain language of Section 1332(a)(3) grants federal jurisdiction over actions between diverse citizens with aliens on both sides and that (2) the complete diversity rule is a judicial gloss on Section 1332's precursor and not on Section 1332(a)(3)--, Section 1332(a)(3) is "best understood as a congressional abrogation of

the complete diversity rule." Dresser, 106 F.3d at 498.  Put differently, complete diversity is inapplicable under Section 1332(a)(3).

This conclusion is sensical: Congress added Section 1332(a)(3) to the existing (a)(1) and (a)(2) in 1948.  See K & H, 567 F. Supp. at 422.  Strawbridge was decided in 1806, and Congress is "presumed to be aware of an administrative or judicial interpretation of a statute."[4]  Lorillard v. Pons, 434 U.S. 575, 580 (1978).  The most natural explanation for adding Section 1332(a)(3), then, is this: Congress, being aware of the complete diversity rule imposed by the Supreme Court, made sure to "provide a federal forum for suits among diverse citizens in which aliens were also parties."  K & H, 567 F. Supp. at 423.

### c. The Purpose of Diversity and Alienage Jurisdiction

---

[4] Scholars debate whether this presumption is grounded in reality.  Compare William N. Eskridge, Jr., Overriding Supreme Court Statutory Interpretation Decisions, 101 Yale L.J. 331 (1991) (arguing that legislators and committee staff are aware of Supreme Court statutory interpretations) with Robert A. Katzmann, Bridging the Statutory Gulf Between Courts and Congress, 80 Geo. L.J. 653 (1992) (finding, as an empirical matter, that committee staff were not aware of relevant court decisions).  But even scholars who argue against this presumption, such as Judge Katzmann, would not object to applying it here.  See Katzmann, supra, at 662 (finding that committee staff are not aware of relevant decision unless they were "major" in some way).  The long-standing complete diversity rule is, without a question, "major."

To gild the lily, rejecting the complete diversity for actions arising under Section 1332(a)(3) is consistent with the ultimate purposes of both (1) diversity jurisdiction and (2) alienage jurisdiction.[5]

**First**, the purpose of diversity jurisdiction would not be served by imposing the requirement of complete diversity over actions between diverse domestic parties joined by aliens.

Diversity jurisdiction was designed to protect non-forum litigants from potential state court bias in favor of forum-state litigants.  See Guarantee Trust Co. v. York, 326 U.S. 99, 111 (1945).  As Alexander Hamilton famously articulated in the Federalist Papers, federal courts, "having no local attachments, will be likely to be impartial between the different States and their citizens and . . . will never be likely to feel any bias inauspicious to the principles on which it is founded."  The Federalist No. 80, at 390 (Alexander Hamilton) (Jim Miller ed., 2017).  "The reasonableness of the agency of the national courts in cases in which the State tribunals cannot be supposed to be impartial speaks for itself."  Id.; see also Henry J. Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev.

---

[5] See Stephen Breyer, Making Democracy Work 94-98 (2010) (stating that he "believe[s] a purpose-oriented approach is better than a purely text-oriented approach" and explaining why a purpose-based interpretation of statutes is more consistent with American democracy).

483 n.4 ("It is true, of course, that [Hamilton's] explanation of diversity jurisdiction on the basis of local prejudice has been written into the Constitution by judicial decision.").[6] Given this rationale, the complete diversity rule makes sense: if diversity jurisdiction exists because of a fear that the state court is biased towards a forum-citizen party, the

---

[6] Chief Justice John Marshall echoed the same concern, stating the following:

> [T]hat the tribunals of the states will administer justice as impartially as those of the nation, to parties of every description, it is not less true that the constitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and apprehensions of suitors, that it has established national tribunals for the decision of controversies between aliens and a citizen, or between citizens of different states.

Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 87 (1809).

Another federalist, James Wilson, expressed a similar concern in the Pennsylvania convention:

> [H]ow a merchant must feel to have his property lay at the mercy of the laws of Rhode Island? I ask further, how will a creditor feel who has his debts at the mercy of tender laws in other states? It is true, that under this Constitution, these particular iniquities may be restrained in future; but, sir, there are other ways of avoiding payment of debts. There have been instalment act, and other acts of similar effects.

Merrill Jensen et al, Ratification of the Constitution by the States: Pennsylvania, in 2 The Documentary History of the Ratification of the Constitution 519 (John P. Kaminski et al, eds. 1976).

presence of another forum-citizen on the other side of the case should allay the fear.

The same cannot be said for suits involving aliens.  The presence of aliens on both sides does nothing to alleviate the fear that the state court would be unfairly favorable to the forum-citizen party.  Suppose, for example, a suit in Alabama state court between an Alabama citizen and a New York citizen. If the New York citizen is joined by another Alabama citizen (thus creating the configuration of [$C^{AL}$ v. $C^{NY}$ + $C^{AL}$]), Hamilton would say, the risk of local bias is alleviated (and thus no need for federal jurisdiction exists).  If, however, a Chinese citizen, instead of an Alabama citizen, joined the New York citizen (creating [$C^{AL}$ v. $C^{NY}$ + $A^{CHINA}$]), the fear of local bias would, in theory, still persist.  Another example given by one district court is the following:

> Consider a case brought in New York state court where a citizen of New York and a citizen of Lithuania sue a Texan and a codefendant. [$C^{NY}$ + $A^{LITHUANIA}$ v. $C^{TX}$ + $C^1$].  If the co-defendant is a New Yorker [$C^{NY}$ + $A^{LITHUANIA}$ v. $C^{TX}$ + $C^{NY}$], the Texan's fear of bias will be allayed -- for in order to penalize the Texan the judge will have to harm one of his or her neighbors. On the other hand, if the codefendant is a Lithuanian [$C^{NY}$ + $A^{LITHUANIA}$ v. $C^{TX}$ + $C^{LITHUANIA}$], the nervous Texan will be little comforted -- he or she has no reason to think that the judge will be any less willing to penalize a Texan and a Lithuanian than to penalize a Texan alone.

Bank of N.Y. v. Bank of Am., 861 F. Supp. 225, 229 (S.D.N.Y.
1994).  Thus, applying the complete diversity rule to diverse
actions between domestic parties joined by aliens would not
serve the purpose of the complete diversity rule -- or of
diversity jurisdiction in general.

**Second**, applying the complete diversity rule to Section
1332(a)(3) actions would defeat the purpose of alienage
jurisdiction.  Alienage jurisdiction, like diversity
jurisdiction, is also based on the fear that the state court may
be biased towards a forum-citizen party.  If left with no
federal jurisdiction, aliens would have no choice but to turn to
state court, and state courts might deny justice to aliens, the
theory goes, thereby evoking a belligerent response from the
alien's country:

> As the denial or perversion of justice by the
> sentences of courts, as well as in any other manner,
> is with reason classed among the just causes of war,
> it will follow that the federal judiciary ought to
> have cognizance of all causes in which the citizens of
> other countries are concerned. This is not less
> essential to the preservation of the public faith than
> to the security of the public tranquility.

The Federalist No. 80, supra, at 388-89 (Alexander Hamilton);
see also Hines v. Davidowitz, 312 U.S. 52, 62 n.9 (1941) ("The
importance of national power in all matter relating to foreign
affairs and the inherent danger of state action in this field

are clearly developed in Federalist papers No[s]. 3, 4, 5, 42, and 80.").

Consistent with this predicate, an early Congress passed the First Judiciary Act of 1789, which granted circuit courts original jurisdiction over, among other things, "all suits of a civil nature . . . where the manner in dispute exceeds . . . five hundred dollars . . . or an alien is a party."  Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 73, 78.  This grant gave aliens access to federal courts, provided that they meet the requisite amount in controversy.  Not content to treat aliens like domestic citizens, however, Congress also exempted aliens from the amount-in-controversy requirement for certain actions -- actions "where an alien sues for a tort only in violation of the law of nations or a treaty of the United States."  Id. ch. 20, § 9, 1 Stat. 73, 77.

If federal courts should resolve disputes involving aliens and domestic parties because mishandling of such disputes may blossom into a national crisis, denying federal jurisdiction because a domestic party and an alien party are not "diverse" under the complete diversity rule makes no sense.[7]  Not only does

---

[7] The Court is aware that this argument is in tension with the courts' holding that there is no diversity in the alignment of [A v. A + C].  See, e.g., Grupo Dataflux, 541 U.S. at 569 (stating, in a case involving plaintiffs who were both domestic and alien parties and an alien defendant, that because "aliens were on both sides of the case, . . . the requisite diversity

the fear of local prejudice towards the domestic party remain in diverse actions joined by aliens, but also the risk of international friction is present in those actions.  See, e.g., Dresser, 106 F.3d at 500 (stating that "the international relations concerns remain" and "the presence of aliens on both sides of the controversy heightens those federal concerns").

Thus, because the purpose of diversity and alienage jurisdiction counsel against applying the complete diversity rule, the Court follows the clear textual instruction from Congress and holds that diversity jurisdiction exists in cases between diverse domestic parties with aliens on both sides of the controversy.[8]

---

was therefore absent"); Yarala, 2014 WL 12689938, at *3 (holding that there is no diversity in a suit following the configuration of A v. A + C); Israel Aircraft Indus., 16 F.3d at 202 (same); U.S. Motors, 551 F.3d at 422-23 (same).

This argument is not the Court's ratio decidendi, however, it merely strengthens the other arguments based on the statutory text and the purposes of diversity jurisdiction.

[8] Were the Court to resort to the legislative history despite the clear text, however, it would not move the needle. The legislative history of Section 1332(a)(3) is, quite frankly, perplexing.  It appears that there is some indication that Congress's primary concern in adding Section 1332(a)(3) to chapter 28 of the United States Code was to provide diversity jurisdiction for actions between diverse domestic citizens and alien(s) on one side.  See Nancy M. Berkley, Federal Jurisdiction over Suits between Diverse United States Citizens with Aliens Joined to Both Sides of the Controversy under 28 U.S.C. 1332(a)(3), 38 Rutgers L. Rev. 71 88-90 (1985).  At least two federal courts, however, have explicitly rejected that

### d. Judicial Policy

Though the text and purpose of Section 1332(a)(3) suggest that diversity jurisdiction exists over actions between diverse domestic parties joined by aliens, the Court now considers the practical ramifications of such a holding; if a literal reading produces an absurd result, the Court is not bound by it.  See, e.g., Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 454 (1989) ("Where the literal reading of a statutory term would compel an odd result, [courts] must search for other evidence of congressional intent . . . ." (citation and quotations omitted)).

One policy-based argument **against** holding that diversity jurisdiction exists in the alignment of [$C^1$ + A  v. $C^2$ + A] is that a litigant may improperly or collusively join a nominal party to manufacture jurisdiction: as noted above, federal courts do not have jurisdiction over cases of the form [A v. C + A].  But if there is diversity in [$C^1$ + A  v. $C^2$ + A], the alien-plaintiff in the alignment of [A v. C + A] might join a

reading of the legislative history.  Dresser, 106 F.3d at 497 n.1 (3d Cir. 1997); K & H, 567 F. Supp. at 422-23 (D.N.J. 1983).

Given the ambiguity and conflicting interpretations by federal courts, the Court is reassured, even without engaging in the complexities, that at a minimum Section 1332(a)(3)'s legislative history, standing alone, is not strong enough to defeat the unambiguous statutory language and the purpose of diversity and alienage jurisdiction.

nominal domestic party that is diverse from the opposing

domestic party to manufacture the alignment of [$C^1$ + A  v. $C^2$ +

A].[9]

The Court rejects this argument for two reasons.  First, a

different federal statute concerning subject matter jurisdiction

provides a safeguard against party manipulation.  Second, even

if parties could manufacture jurisdiction, holding that

diversity jurisdiction does not exist in the alignment of [$C^1$ +

A  v. $C^2$ + A] would not solve the problem.

**First**, Section 1359 of chapter 28 of the United States Code

("Section 1359") provides a safeguard against attempts

collusively to manufacture diversity jurisdiction.  Section 1359

provides that "[a] district court shall not have jurisdiction of

a civil action in which any party, by assignment or otherwise,

has been improperly or collusively made or joined to invoke the

jurisdiction of such court."  28 U.S.C. § 1359.  The statute, by

its terms, prohibits the fraudulent concoction of diversity.

See id.; Toste Farm Corp. v. Hadbury, Inc., 70 F.3d 640, 642-46

(1st Cir. 1995) (discussing Section 1359 and affirming "the

district court's holding that [Section] 1359 bars jurisdiction

---

[9] It appears that none of the parties in cases that
addressed the issue has raised this counter-argument.  See,
e.g., Brief for Appellees at 24-29, Dresser Indus, Inc. v.
Underwriters Lloyd's of London, 106 F.3d 494 (3d Cir. 1997) (No.
96-1044).  Nevertheless, this pragmatic concern merits a
response.

over plaintiffs' claim"); In re Fresenius Granuflo/Naturalyte
Dialysate Prods. Liab. Litig., 76 F. Supp. 3d 321, 333 (D. Mass.
2015) (Woodlock, J.) ("A plaintiff may not thwart the exercise
of a defendant's right of removal by fraudulently joining a non-
diverse defendant who has no real connection to the case.").
Given the express statutory prohibition of Section 1359, it is
somewhat doubtful that a finding of jurisdiction in the $[C^1 + A$
v. $C^2 + A]$ alignment would make federal courts vulnerable to
the collusive manufacture of diversity.

**Second**, assuming dubitante that federal courts are
susceptible to the collusive manufacture of diversity, the
argument is a double-edged sword: if diversity jurisdiction does
not exist over the alignment of $[C^1 + A$  v. $C^2 + A]$, then
litigants may collusively join a nominal party to **defeat**
diversity.  As noted above, there is diversity jurisdiction in
the alignment of $[C^1$ v. $C^2 + A]$.  See Singh, 9 F.3d at 312.
If there is no federal jurisdiction in the alignment of $[C^1 + A$
v. $C^2 + A]$, the plaintiff may defeat diversity by joining a
nominal foreign plaintiff to create the configuration of $[C^1 + A$
v. $C^2 + A]$ after the defendants removed the case to federal
court.  Thus, holding that no diversity jurisdiction exists in
the party alignment presented in this case would not alleviate
the problem of party manipulation.

Therefore, holding that diversity jurisdiction exists in the alignment of [$C^1$ + A  v. $C^2$ + A] would not necessarily carry negative policy implications -- let alone policy consequences rising to the level of "absurdity" that would trump the text of Section 1332(a)(3).  See Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., 559 U.S. 393, 414 n.13 (2010) ("The possible existence of a few outlier instances does not prove [that an] interpretation is absurd.  Congress may well have accepted such anomalies as the price of a uniform system of federal procedure."); Exxon Mobil Corp v. Allapattah Servs., Inc., 545 U.S. 546, 565 (2005) (noting that something that "may seem odd . . . is not absurd").

For the reasons discussed above -- the language of the statute, the purposes of diversity and alienage jurisdiction, and the pragmatic considerations -- the Court holds that federal courts have diversity jurisdiction over matters between diverse domestic parties with alien parties on both sides as long as the amount in controversy is met.  This result is consistent with most courts' positions on the issue.  See, e.g., Dresser, 106 F.3d at 497-500; Transure, 766 F.2d at 1298-99; Goar, 688 F.3d at 421 n.6; Allendale, 10 F.3d at 427-28; Integrated Commc'n & Techs, 2021 WL 5493860, at *3; Commercial Union Ins. Co. v. Cannelton Indus., Inc., 154 F.R.D. 164, 169 (W.D. Mich. 1994); Bank of N.Y., 861 F. Supp. at 228-29; Camper & Nicholsons Int'l,

<u>Ltd.</u> V. <u>Blonder Marine & Charter, Inc.</u>, 793 F. Supp. 318, 320 (S.D. Fla. 1992); <u>Clark</u> v. <u>Yellow Freight Sys. Inc.</u>, 715 F. Supp. 1377, 1378 (E.D. Mich. 1989); <u>K & H</u>, 567 F. Supp. at 423-24. <u>But see, e.g.</u>, <u>Jet Traders Inv. Corp.</u> v. <u>Tekair, Ltd</u>, 89 F.R.D. 560, 566 (D. Del. 1981).

### D.   Application to This Case

Because (1) this case is of the party alignment of [$C^1$ + $A^1$ v. $C^2$ + $A^2$], (2) federal courts have diversity jurisdiction in this alignment, and (3) Auctus in good faith alleges that the amount in controversy exceeds $75,000, Compl. ¶ 7, this Court has subject matter jurisdiction over the case at bar.

### IV.  CONCLUSION

For the aforementioned reasons, the Court holds that it has subject matter jurisdiction over the matter.  The Court will revisit the issue if contrary evidence indicates that Drone Guarder was not headquartered in London at the time the complaint was filed.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[10]

---

[10] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 43 years.